CRAIG C. ANDREWS, ET AL.                    CIVIL ACTION


V.                                          NO. 16-14842


LOMAR CORP. LTD., ET AL.                    SECTION F


ORDER AND REASONS

Before the Court is the plaintiffs' motion to reconsider or for new trial.  For the reasons that follow, the motion is DENIED.


**Background**

This litigation arises out of a Mississippi River pilot's allegations that he suffered a career-ending hip injury climbing an unsafe ladder while boarding the MARINE TRADER to take over piloting duties.

The Court assumes familiarity with the facts of the case as summarized in the Court's June 19, 2017 Order and Reasons.  Craig C. Andrews worked as a river pilot for 25 years, regularly climbing ladders to board thousands of ships.  During his career as a river pilot, in 2009, Mr. Andrews underwent bilateral hip replacements.

Dr. Chad Millet performed the surgeries.  Mr. Andrews continued working as a full-time pilot with his artificial hips.

Years later in December 2015, Mr. Andrews called to schedule an appointment with Dr. Millett; the appointment was scheduled for January 28, 2016.  Four days before his pre-scheduled appointment with Dr. Millet, on January 24, 2016, Mr. Andrews was assigned to pilot the M/V TRADER in Pilottown, Louisiana in Plaquemines Parish to the Port of New Orleans.  Mr. Andrews boarded the MAINE TRADER midstream using an industry-standard combination ladder, which employed both a pilot ladder (also known as a Jacob's ladder) and the ship's accommodation ladder.  He stepped from the pilot boat onto the ship's pilot ladder and started climbing up.  As he climbed up the pilot ladder, he reached a point where he had to transition from the top of the pilot ladder onto the ship's accommodation ladder by stepping with his right foot onto the accommodation ladder's lower platform.  After he stepped onto the accommodation ladder platform and started walking up the steps of the accommodation ladder, he says he heard clicking in his left hip.  He did not feel any pain at that time.  Nor did he complain to the ship's crew.  He never requested that an accident report be completed.  Instead, he continued working without complaint.

Mr. Andrews safely piloted the vessel for seven hours before he left the ship by climbing down the same combination ladder midstream at Poydras. Mr. Andrews did not seek medical treatment when he left the ship. But four days later, he did attend the previously-scheduled January 28, 2016 appointment with Dr. Millet. On the sign-in sheet for his January 28 appointment with Dr. Millet, Mr. Andrews indicated that his visit was not the result of an injury, it was not work-related, and that his symptoms had begun two months earlier. When he saw Dr. Millet, Mr. Andrews complained of clicking and triggering in his left hip, which he stated had begun gradually, without injury, about two months earlier.

Left hip x-rays taken on January 28, 2016 show significant wear of the polyethylene liner with some superior migration of the head and some subluxation (in layman's terms, the head was not located in the middle of the socket). As a result, almost one month later on February 24, 2016, Dr. Millet performed left hip revision surgery, which involved replacing the socket and ball in the left hip. During the surgery, Dr. Millet observed that the superior portion of the polyethylene liner was fractured; such a fracture could be caused by a high-impact injury, or steady wear over time. Dr. Millet could not tell what caused the fracture by observing it during the surgery, but Dr. Millet has opined that he believes that the fracture caused Mr. Andrews's left hip clicking

and pain that Mr. Andrews had told him had begun two months before his late January 2016 appointment.

Dr. Millet saw Mr. Andrews twice more in 2016: on March 22 and on May 24. When Mr. Andrews again completed a sign-in sheet for the May 24 visit, he stated on that form (again) that his visit was not due to an injury and was not work-related. Dr. Millet made no determination as to Mr. Andrews's physical limitations or whether he could resume work.

To determine if he could be released back to work after his hip revision surgery, Mr. Andrews had an appointment on March 25, 2016 with Dr. Bourgeois. Dr. Bourgeois did not believe that Mr. Andrews could return to work at that time. A few weeks later on April 13, 2016, Dr. Bourgeois completed a disability packet for Sun Life Assurance Company of Canada, Mr. Andrews's disability insurer, stating that Mr. Andrews was permanently disabled from working in his previous position as a river pilot. Dr. Bourgeois sent a letter to the insurance company the next day, stating that Mr. Andrews is not fit for duty as a river pilot and that this status is "more likely than not" permanent. Nine days later, however -- when Mr. Andrews returned to see Dr. Bourgeois on April 22, 2016 to undergo a Coast Guard physical examination -- Dr. Bourgeois declared to the Coast Guard that Mr. Andrews "passed all

aspects of the USCG physical requirements." That same day, Dr. Bourgeois declared that Mr. Andrews passed all aspects of a functional capacity evaluation with no restrictions. Dr. Bourgeois has not seen Mr. Andrews since April 22, 2016. A couple months later, Mr. Andrews retired from river piloting.

On August 22, 2016, Mr. Andrews and his wife, Beverly R. Andrews, sued Lomar Corp. Ltd., Lomar Shipping Ltd., and Hapag-Lloyd, AG in state court, seeking to recover damages for his allegedly career-ending hip injury.[1] The plaintiffs alleged that the pilot ladder of the MAINE TRADER was rigged in violation of federal laws and regulations; the defendants were negligent in rigging the ladder in violation of safety standards; the defendants negligently failed to warn him of the ladder's unsafe condition; and the MAINE TRADER was unseaworthy. The case was removed to this Court.

On January 24, 2017, Mr. Andrews saw Dr. Millet, who opined that Mr. Andrews was "doing fine with his hip" such that he could resume the same activities he was able to do after his first hip replacement surgery. Dr. Millet's deposition was taken on February

---

[1] On September 29, 2016, the plaintiffs amended the complaint to name the correct entities as defendants, MS MAINE TRADER GMBH & Co. (as owner of the MAINE TRADER) and Lomar Shipping LTD. and, thereafter, moved for and was granted dismissal of Hapag-Lloyd AG.

22, 2017.  Like Dr. Watson,[2] Dr. Millet testified that the left revision surgery he performed was necessary due to polyethylene wear rather than a specific accident.  Dr. Millet has stated that he expected that Mr. Andrews would need a revision surgery following his 2009 hip replacements because he was young when he had his hips replaced, he was active, and he was overweight.  That Mr. Andrews was overweight, combined with the verticality of the acetabular component in the left hip to accelerate wear, Dr. Millet has opined, the seven-year period between the left hip replacement surgery and the revision surgery was within the time range he would expect to see.  Dr. Millet has specifically testified that he cannot causally relate Mr. Andrews's left hip revision to the alleged incident boarding the MAINE TRADER on January 24, 2016.

During his deposition on March 7, 2017, Dr. Bourgeois admitted that he is not familiar with Mr. Andrews's condition before he climbed the ladder and, therefore, he has no opinion on whether climbing the ship's ladder necessitated Mr. Andrews's left hip revision surgery.  Dr. Bourgeois admitted that because Dr. Millet performed the left hip revision surgery, he is in a better position

_____

[2] Dr. Kevin Watson, an orthopedist, performed an independent medical examination of Mr. Andrews at the defendants' request on January 26, 2017.  Dr. Watson has opined that Mr. Andrews's left hip revision surgery was due to significant polyethylene wear "that is not related to any injury at work...I do not see medical causation for his left hip problem due to work injury."

to render an opinion on medical causation, and Dr. Bourgeois deferred to Dr. Millet on the medical causation issue.

Almost three weeks after giving his deposition, Dr. Bourgeois wrote a letter to Mr. Andrews's counsel. In this March 24, 2017 "report," as plaintiff characterizes it, Dr. Bourgeois opined that climbing the pilot ladder "could have" injured Mr. Andrews's left hip. He states:

> At your request I have reviewed that (sic) depositions of Dr. Chad Millet, Mr. Craig Andrews, and the photographs submitted of the worksite in question. The fracture of the acetabular component of Mr. Andrew's artificial hip was noted to involve the superior portion of the 'socket' by Dr. Millet. Mr. Andrew's left leg position as noted in the photograph showed full extension and a requirement for him to push off with this leg to complete the step up and onto the platform. This mechanism provided significant force and axial loading of the hip arthroplasty that could have resulted in fracture of the antero-superior aspect of the 'socket' of the left hip arthroplasty. This type of difficult and compromised physical position and demand speaks to the reason why I have not cleared him to return to full duty as a Mississippi River pilot. This also coincides with Mr. Andrews' testimony regarding the onset of clicking in the left hip that eventually prompted his return to Dr. Millet.

The defendants moved for summary judgment dismissing the plaintiffs' claims on the ground that medical causation cannot be proved, and they simultaneously moved to exclude Dr. Bourgeois's medical causation opinion. On June 19, 2017, the Court granted the motion, finding that the plaintiffs failed to submit competent

medical evidence that it is more probable than not that Mr.

Andrews's injuries were caused by the ladder incident. A judgment

in favor of defendants issued on June 21, 2017. The plaintiffs

now move for a new trial or reconsideration of the Court's June 19

Order and Reasons and June 21 Judgment in favor of the defendants.

I.

Rule 59(e) allows a court to alter or amend a judgment if the

movant establishes a manifest error of law or presents newly

discovered evidence. Fed. R. Civ. P. 59(e).[3] Rule 59(e) "serve[s]

the narrow purpose of allowing a party to correct manifest errors

of law or fact to present newly discovered evidence[;]" it is "an

extraordinary remedy that should be used sparingly." Austin v.

Kroger Texas, L.P.,--- F.3d ---, No. 16-10502, 2017 WL 1379453, at

*8 (5th Cir. Apr. 14, 2017)(quoting Templet v. HydroChem Inc., 367

F.3d 473, 479 (5th Cir. 2004)).

"A Rule 59(e) motion 'calls into question the correctness of

a judgment.'" Templet v. Hydrochem, Inc., 367 F.3d 473, 478 (5th

---

[3] A motion seeking reconsideration or revision of a district court
ruling is analyzed under Rule 59(e), if it seeks to alter or amend
a final judgment, or Rule 54(b), if it seeks to revise an
interlocutory order. See Cabral v. Brennan, 853 F.3d 763, 766
(5th Cir. 2017)(determining that the district court's erroneous
application of the "more exacting" Rule 59(e) standard to a motion
granting partial summary judgment was harmless error given that
the appellant was not harmed by the procedural error).

Cir. 2004)(quoting In re Transtexas Gas Corp., 303 F.3d 571, 581

(5th Cir. 2002)).  Because of the interest in finality, Rule 59(e)

motions may only be granted if the moving party shows there was a

mistake of law or fact or presents newly discovered evidence that

could not have been discovered previously.  Id. at 478-79.  Rule

59 motions should not be used to relitigate old matters, raise new

arguments, or submit evidence that could have been presented

earlier in the proceedings.  See id. at 479; Rosenblatt v. United

Way of Greater Houston, 607 F.3d 413, 419 (5th Cir. 2010)("a motion

to alter or amend the judgment under Rule 59(e) 'must clearly

establish either a manifest error of law or fact or must present

newly discovered evidence' and 'cannot be used to raise arguments

which could, and should, have been made before the judgment

issued'")(citing Rosenzweig v. Azurix Corp., 332 F.3d 854, 864

(5th Cir. 2003)(quoting Simon v. United States, 891 F.2d 1154,

1159 (5th Cir. 1990)).

## II.

The plaintiffs urge the Court to reconsider its June 19, 2017

Order and Reasons granting summary judgment in favor of the

defendants, noting these "alleged errors": there are genuine

issues of material fact as to causation of the injury; the Court

failed to consider the totality of the evidence, including Dr.

Bourgeois's "expert report"; the Court failed to apply The Pennsylvania Rule; and the Court failed to apply the Housley presumption. The defendants counter that the plaintiffs fail to identify a mistake of law or fact and, instead, simply rehash prior arguments and prior evidence, making reconsideration unwarranted. The Court agrees.

On June 19, 2017, the Court granted the defendants' motion for summary judgment after determining that the plaintiffs had failed to submit competent evidence to satisfy their burden of proving (or identifying a genuine dispute of material fact regarding) medical causation. Although the plaintiffs now ask the Court to reconsider its ruling, they fail to identify or submit any evidence that would satisfy their burden on medical causation; there is still no medical opinion in the record that the ladder more likely than not caused Mr. Andrews's hip condition necessitating revision surgery. Instead, the plaintiffs simply re-urge their arguments, which the Court rejected.

First, the plaintiffs argue that Dr. Bourgeois's unsworn letter opining that the ladder "could have" caused a hip fracture, if considered, would carry the plaintiffs' burden of identifying a genuine dispute of material fact concerning medical causation. The Court disagrees. Even assuming that the plaintiffs put Dr.

Bourgeois's unsworn letter in admissible form, which they still have not done, Dr. Bourgeois's opinion falls short of meeting the plaintiffs' preponderance burden on medical causation. Dr. Bourgeois's equivocation -- that the ladder incident "could have" caused Mr. Andrews's hip condition -- suggests a mere possibility. In suggesting that the probabilities are at best evenly balanced, the opinion is no better than speculation or guesswork, which is insufficient to meet the plaintiffs' burden. Cf., e.g., Rooney v. Nuta, 267 F.2d 142, 147 (5th Cir. 1959)("The evidence relied upon established nothing more than a possibility that the recurring discharge of the batteries was caused by a short circuit in the wiring of the vessel. It is not sufficient that the finder of facts is warranted in concluding that the alleged negligent condition could possibly have caused the damage claimed. It is necessary that the proof go further and establish the conclusion as a reasonable probability."); Hancock v. Diamond Offshore Drilling, Inc., No. 07-3200, 2008 WL 3501015, at *4 (E.D. La. Aug. 8, 2008); Johnson v. Horizon Offshore Contractors, Inc., No. 06-10689, 2008 WL 916256, at *5 (E.D. La. Mar. 31, 2008)(the plaintiff "has presented no evidence whatsoever to show a causal connection between his illness and his work for [the defendant]. Speculation and conjecture...is insufficient to show that there is more than a mere possibility that a causal relationship exists between [the

defendant's] alleged negligence and [the plaintiff's] injury.");
Fournier v. Petroleum Helicopters, Inc., 665 F. Supp. 483, 486
(E.D. La. 1987)(citing W. Page Keeton, Prosser and Keeton on Torts,
263, 269 (5th ed. 1984)0; Moss v. Technology Ins. Co., No. 14-165,
2015 WL 4167493, at *2 (W.D. La. July 9, 2015)(testimony that
trauma could cause an aneurysm "is not the same as testimony that
the motor vehicle in this case caused the [plaintiff's] aneurysm.
The medical testimony in this matter is insufficient to show that
it was more likely than not that [the plaintiff's] aneurysm was
caused by the accident.").  As before, there is no medical expert
opining that Mr. Andrews's left hip injury was, more likely than
not, caused by the MAINE TRADER's accommodation ladder; thus, the
defendants carried their summary judgment burden based on a
complete absence of record evidence to support the mandatory
element of medical causation.  Reconsideration is not warranted.

Second, the plaintiffs contend that reconsideration is
warranted because the Court failed to apply The Pennsylvania Rule,
which would have shifted the burden of disproving medical causation
to the defendants.  The plaintiffs simply recycle the same
arguments that this Court considered and rejected when summary
judgment was granted in favor of the defendants.  The plaintiffs

fail to persuade the Court that it erred in declining to apply The

Pennsylvania Rule.[4]

Finally, for the first time, the plaintiffs advance arguments

regarding the defendants' liability for aggravating Mr. Andrews's

preexisting hip trouble.  Also for the first time, the plaintiffs

urge the Court to apply a different presumption regarding

causation, the so-called Housley presumption.  In Housley v.

Cerise, the Louisiana Supreme Court held that the fact finder in

a tort case may presume a causal relationship between an incident

and an injury if the plaintiff proves: (1) before the incident, he

was in good health; (2) after the incident symptoms of the injury

appeared and continuously manifested themselves; and (3) based on

medical evidence, circumstantial evidence, or common knowledge,

there is a reasonable possibility of causation between the incident

and the injury.  579 So. 2d 973, 980 (La. 1991)(citation omitted).

The plaintiffs could have advanced these arguments previously, but

---

[4] The Court does not quarrel with the general principle invoked by
the plaintiffs, that is, that The Pennsylvania Rule, which
originally applied only to collisions between ships, now applies
to a variety of maritime accidents.  But the plaintiffs again
invoke case literature concerning whether to apply the rule in
allision cases, or in cases in which objects in navigable waters
were not properly marked.  The plaintiffs fail to invoke any
analogous case in which the rule was applied on facts similar to
those of record in this case, or when the rule (an evidentiary
presumption) was applied in spite of the fact that the parties
have presented evidence regarding causation.  Again, the
plaintiffs make the same unpersuasive arguments.

failed to do so.  Even if the Court was inclined to consider these tardy and inconsistent arguments, the plaintiffs appear to concede that the factual predicate for applying the Housley presumption is not met on the summary judgment record in light of Mr. Andrews's preexisting hip condition.  And, insofar as the plaintiffs invoke the settled legal principle that a defendant must compensate a victim for the full extent of the aggravation when the defendant's tortious conduct aggravates the plaintiff's preexisting condition, the Court declines to consider this tardy argument.  The principle of law advanced is sound, but the plaintiffs nevertheless failed not only to advance this argument in their original papers, but likewise failed to support it; the plaintiffs failed to submit competent medical evidence establishing (or raising a fact issue regarding) whether the ladder incident more probably than not aggravated Mr. Andrews's preexisting hip condition.

Accordingly, the plaintiffs' motion to reconsider or for new trial is hereby DENIED.

New Orleans, Louisiana, August _9_, 2017

MARTIN L.C. FELDMAN
U.S. DISTRICT JUDGE

14